IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY DISTRICT
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| MATTHEW MACH | : | Case No. 2:24-cv-00098-DCR |
| | : | |
| Plaintiff | | |
| | : | |
| v. | | |
| | : | |
| HON. MERRICK GARLAND, ET AL. | | |
| | : | |
| Defendants | | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, through Counsel, provides this Opposition to Defendants' Motion to Dismiss. (Doc. 12). We start with a review of the standard of review, then turn to the salient facts, as plead, which must be construed as true for purposes of Defendants' Motion, and then demonstrate that the applicable law compels the conclusion that Defendants' Motion is baseless and should be denied.

**I.   Standard of Review**

In dealing with a Motion to Dismiss, the Court is to construe the complaint in the light most favorable to the non-movant (here Plaintiffs), accepting their well-pleaded factual allegations as true, and drawing all reasonable inferences in their favor. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013).

Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under Rule 56. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Golf*

1

*Vill. North, LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (*quoting Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020)). Courts may consider public records for the truth of the statements contained within them only when the "contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). However, to the extent that a plaintiff makes allegations that are in conflict with a public record, the allegations must be credited. *Tobey v. Chibucos*, 890 F.3d 634, 641-642 (7th Cir. 2018);[1] *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion **not for the truth of the facts recited therein**, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

**II.    Facts**

In mid-2017, Plaintiff Matthew Mach tragically, suddenly, and unexpectedly lost his grandfather, who was instrumental in Matthew Mach's upbringing. (Amended Verified Complaint, ¶ 8, Pg. 2, Doc. 8, PageID#44). In July of 2017, Plaintiff voluntarily checked himself into St. Mary's Medical Center out of concern for himself and his mental state. (*Id*., at ¶10, Pg. 3, PageID#45).

After voluntarily submitting himself for examination, however, a staff member from St. Mary's filed an Application for examination with the Cabel County Circuit Clerk, for court ordered

---

[1] Every Court of Appeals that has considered the issue has held that it is improper to judicially notice the truth of prior judicial findings of fact. *See, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (noting that on a motion to dismiss, a court may take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion. . . ."); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir. 1992); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998); *United States v. Jones*, 29 F.3d 1549, 1553 (1st Cir. 19940; *Tobey v. Chibucos*, 890 F.3d 634, 647-48 (7th Cir. 2018); *Holloway v. Lockhart*, 813 F.2d 874, 878-79 (8th Cir. 1987).

examination. (*Id*., at ¶11). Reports indicate that he had checked in for voluntary inpatient treatment, but staff at St. Mary's "couldn't find a voluntary bed," prompting the filing for examination, and a request for further evaluation under W.V. Code § 27-5-3, which is for a probable cause hearing. (*Id*., at ¶12). Specifically, W.V. Code § 27-5-3 specifically provides that the purpose of any such probable cause finding is not a determination of mental illness, but instead is merely for examination and observation. *Id*. On July 18, 2012, the court ordered Mr. Mach to be examined pursuant to W.V. Code § 27-5-3. (*Id*., at ¶13). Under that section, no person may generally be held involuntarily more than three days without certifications and other requirements. *Id*.

Plaintiff was transferred to Highlands Hospital, located at 300 56th St. SE, Charleston, WV 25304, where he elected to receive mental health treatment, where he sought and obtained treatment. (*Id*., at ¶14). No final or formal commitment proceedings were instituted against Mr. Mach, as provided in W.V. Code §27-5-4. (*Id*., at ¶15).

Indeed, no final or formal hearing or commitment hearing was held with respect to Mr. Mach, where he was permitted to be represented by counsel, to cross-examine witnesses, where an evidentiary standard of proof of applied, and where other hallmarks of a formal proceeding were held. (*Id*., at ¶16; PageID#46). Instead, the legal proceedings against him were dismissed a few months later, after the probable cause order for evaluation. *Id*.

Defendants misconstrue the nature of the evaluation order to attempt to justify the unlawful and unconstitutional disarmament of a peaceful plaintiff. As the applicant in Plaintiff's treatment stated, Mach "was willing to have inpatient treatment today but I couldn't find a voluntary bed." (Amended Verified Complaint, ¶12, p. 3, Doc. 8, PageID#45; Defendants' Exhibit A: Cabell County, WV Case File 17-MH-651 at p. 11). In fact, Plaintiff's verified complaint indicates that

3

he willingly sought treatment, but due to the lack of voluntary beds, an application was submitted pursuant to W.V. Code § 27-5-3 for court-ordered evaluation. (Amended Verified Complaint, ¶ 15, p. 3, Doc. 8, PageID#45). Mach was not present for these proceedings. (*Id*., at ¶ 16, p. 4, Doc. 9, PageID#46). To be clear, the code under which Mach received evaluation *requires* the initiation of final commitment proceedings before a patient may be considered committed, which never happened here. (Amended Verified Complaint, ¶¶ 15, 16, p. 3, 4, Doc. 8, PageID#45-46; W.V. Code § 27-5-3(g); 27-5-4).

About a week after Plaintiff sought mental healthcare, in either late July or early August 2017, Plaintiff was discharged from Highlands Hospital with a clean bill of health, with the crisis averted. (*Id*., at ¶21; PageID#47). Since leaving Highlands Hospital, has not had a mental health crisis and has a clean bill of health, but continued to seek therapy as needed through the end of 2017. *Id.*

Plaintiff, on January 26, 2024, attempted to purchase a firearm, but was denied due to a background check via the National Instant Criminal Background Check System ("NICS"). (*Id.,* ¶¶ 24-26, Pg. 6, PageID#48). Plaintiff still wishes to purchase a firearm, but is being prevented from doing so due to the NICS denial. (*Id.,* ¶ 7, Pg. 6, PageID#48). Plaintiff issued a Request for or Challenge the Reason(s) for Firearm Related Denial on January 31, 2024, and the Attorney General, on February 1, 2024, responded, indicating "the FBI's Criminal Justice Information Services Division does not provide the reason(s) for delays' denials or process challenges regarding permits issued by state or local agencies that use the ... (NICS) for firearm related purposes." (*Id.,* ¶¶ 28-29, Pg. 6, PageID#48). On June 6, 2024, Plaintiff once again attempted to seek a clarification or correction of the Department of Justice's records, once again providing the NICS Transaction Number. (*Id.,* ¶ 31, Pg. 7, PageID#49). The DOJ responded that they purged

4

the record of Plaintiff's denial. (*Id.,* ¶¶ 32-33, Pg. 7, PageID#49). Plaintiff still seeks to own a firearm as he is legally eligible to do so, but cannot as a consequence of this denial and fear of prosecution. (*Id.,* ¶¶ 34-37, Pg. 7-8, PageID#49-50).

Plaintiff presently poses no threat to himself or others, is not currently mentally ill, has no intention of harming himself or others, and any issues of mental distress were completely and satisfactorily resolved in 2017, approximately seven years ago. (*Id*., at ¶22) Plaintiff has had no need for further mental health treatment since, and since 2017, has no mental health issues, and since 2019 has given up the use of alcohol in his life. (*Id*., at ¶23).

### III.   LAW AND ARGUMENT

#### 1. Mach was not committed for purposes of 18 U.S.C. § 922(g)(4)

Defendants claim, without citing to any case law about W.V. Code § 27-5-3, that the probable cause proceedings against Mach pursuant to W.V. Code § 27-5-3 is sufficient to be considered commitment under 18 U.S.C. § 922(g)(4). Not so. West Virginia law dictates that one is not committed until final commitment proceedings begin under W.V. Code § 27-5-4, and federal courts have already held that § 27-5-3 is insufficient to trigger the ban under 18 U.S.C. § 922(g)(4). *Shepherd v. Garland*, 2022 U.S. Dist. LEXIS 60465 (WVND 2022) ("What apparently happened to Plaintiff in 2014 is contemplated under West Virginia Code § 27-5-3 .... Not until after a probable cause hearing is held pursuant to § 27-5-2 could 'final commitment proceedings' begin under § 27-5-4. Therefore, no 'final commitment proceedings' were had and Plaintiff was never 'committed'").

Moreover, 27 C.F.R. 478.11 provides the following definition of "Committed to a mental institution: "A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution

involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution." Federal law further makes clear that a person "in a mental institution for observation" is not committed under federal law. (https://www.atf.gov/file/58791/download).

Here, Defendant shows no record of proceedings pursuant to W.V. Code § 27-5-4 being imitated against Plaintiff. That is because no such proceedings were ever initiated. The proceedings presented by Defendants is limited to a probable cause order, not a final commitment proceeding. (Amended Verified Complaint, Doc. 8, ¶¶ 11 – 16, 20, Pg. 4-5, PageID#46-47). Plaintiff sought healthcare, was treated and released with a clean bill of health, is not a threat to himself or others, is not currently mentally ill, has no intention of harming himself or others, and has no mental health issues, and has not had any mental health issues since 2017. (*Id.,* ¶¶ 21-22, Pg. 5, PageID#47).

Because Matthew Mach was not committed to a mental institution under 18 U.S.C. § 922(g)(4), Defendants' motion to dismiss Plaintiff's Illegal Firearms Denial Count under 18 USC § 925A should be denied.

2. **Even if Mach was committed to a mental institution, applying 18 U.S.C. § 922(g)(4) to disqualify him here violates the Second Amendment.**

Defendants, in direct contradiction of published Sixth Circuit case law, baselessly claim it is always acceptable to permanently disarm those who have previously suffered from mental illness. First, the Sixth Circuit, for eight years, has been clear that *Heller*'s dicta regarding presumptively constitutional regulations does not necessarily make the law constitutional, having previously declared 18 U.S.C. § 922(g)(4) unconstitutional as applied to individuals who do not

pose a danger to themselves or others. *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016 (en banc); *see also, United States v. Williams*, 113 F.4th 637, 644 (6th Cir. 2024) ("...we noted that '*Heller* only established a presumption that' categorical disarmament laws were constitutional.'") (citing *Tyler*, 837 F.3d, at 686-87).

*Tyler*, incidentally, found a violation of the Second Amendment under pre-*Bruen* law (and a concurring opinion that entirely conforms with the standard outlined in *Bruen* and *Rahimi*), for circumstances where someone was committed to a mental institution, was later released, and posed no present risk. 837 F.3d 678. And, other than a dispute about whether Mr. Mach was ever committed to a mental institution within the meaning of 18 U.S.C. § 922(g)(4) (as demonstrated above he was not), this case is otherwise on all fours with *Tyler*. Mr. Mach plead that he sought healthcare, was treated and released with a clean bill of health, is not a threat to himself or others, is not currently mentally ill, has no intention of harming himself or others, and has no mental health issues, and has not had any mental health issues since 2017. (Am. Compl., Doc. 8, ¶¶ 21-22, Pg. 5, PageID#47).

Second, Defendants fail to apply *Bruen*, which "require[s] the government to show that a regulation's infringement on a particular citizen's Second Amendment right was 'consistent with this Nation's historical tradition of firearm regulation." *Williams*, 113, F.4th at 644 (citing *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, at 17). "The relevant inquiry is whether the challenged regulation is consistent with the 'principles that underpin our regulatory tradition.'" *Id*. (*citing United States v. Rahimi*, 144 S.Ct. 1889, 1898 (2024).

This analysis has already been conducted in Judge Batchelder's concurrence in the Sixth Circuit. *Tyler,* 837 F.3d, at 702-714 (Batchelder, concurring). Similarly to the *Rahimi* Court, Judge Batchelder indicated that "[t]he lack of an exact historical antecedent is no more troubling

7

here than it is in a First Amendment case involving internet communications, ... or a Fourth Amendment case involving searches conducted using thermal-imaging cameras, .... By examining the Founding generation's conception of 'right,' as well as **the principles of Founding-era mental-health law**, we can come to a definite conclusion in this case." *Id*., at 704 (citations omitted) (emphasis added).

This *Tyler* concurrence, which engages in the analysis mandated by the Supreme Court in *Bruen* and *Rahimi*, concludes that one's rights, as understood at the time of the Founding, are connected to their ability to know good from evil through their own human reason. *Id*., at 704-05 (citations omitted). "The emphasis on reason is significant, for, according to Founding-era legal definitions, an insane person was someone who had lost his reason." *Id*., at 705 (citing 1 William Blackstone, Commentaries *304). At the time of the Founding, justices could confine and disarm persons who, at that time, had "dangerous mental impairments." *Id*., at 705 (citing Henry Care, *English Liberties, or the Free-born Subject's Inheritance* 329 (6th ed. 1774)).

This authority, however, "allowed for the deprivation of the fundamental right to liberty or the fundamental right to control one's property only upon a valid judgment from a civil tribunal." *Id*., at 706 (citing Henry F. Buswell, *The Law of Insanity in its Application to the Civil Rights and Capacities and Criminal Responsibility of the Citizen* 26-28 (1885)). These deprivations, however, have not been final since *at least* the 1200s. *Id*. (citing 1 Frederick Pollock & Frederic William Maitland, *The History of English Law Before the Time of Edward I* 507-08 (1898)). "[T]he law always imagines that the [] accidental misfortunes [i.e., the misfortunes that caused the lunacy] may be removed." *Id*. (citing 1 Blackstone, *Commentaries* 304-05).

Judge Batchelder concluded that "[t]his comports with the Founding-era conception of rights because that which a person recovered when he overcame a serious mental illness was his

8

*reason*, the faculty necessary to exercise his rights." *Id*. (emphasis in original). "[I]f the government could not, on the basis of mental illness, irrevocably deprive someone of his fundamental right to liberty (and thus of any firearms) or his fundamental right to control his property, why should it be permitted to irrevocably deprive him of the fundamental right to keep and bear arms? The answer is that it should not. Why else would *Heller* use the phrase 'the mentally ill,' rather than 'those who once suffered from mental illness'?" *Id*.

Here, it is abundantly clear that Plaintiff is not an insane person (and was never adjudicated as such for that matter (see Section IIIa)). Plaintiff has had no need for further mental healthcare since 2017, and has no mental health issues, and has abandoned substance abuse for at least five years. (Amended Verified Complaint, ¶23, Pg. 5, Doc. 8, PageID#47). He has *only* had an order for probable cause for observation filed against him more than seven years ago. (*Id*., ¶ 13, Pg. 3, PageID#45). He has had no final commitment proceedings filed against him as required under W.V. Code 27-5-4. (*Id*., ¶ 15-16, Pg. 3-4, PageID#45-46). He was released with a clean bill of health a week after he *consented* to treatment. (*Id*., ¶ 21, Pg. 5, PageID#47). He poses no threat to himself or others, is not mentally ill, and has no intention of harming himself or others, and has had no mental health issues for more than seven years. (*Id*., ¶ 22, Pg. 5, PageID#47).

By every standard that comports with the principles found through the history and tradition of America's Founding-era mental health law, it would be unconstitutional to deprive Mr. Mach of his right to keep and bear arms. He is of sound mind, and is therefore entitled to his constitutional rights under clearly established Sixth Circuit law. The motion to dismiss should be denied.

3. **Even if Mr. Mach was committed to a mental institution, applying 18 U.S.C. § 922(g)(4) to disqualify him here violates the Fifth Amendment.**

Plaintiff's complaint sues over the deprivation of "the right to be heard in a timely manner and in a timely fashion, as to both the proceedings at issue to the extent that the West Virginia proceedings act as a disqualifier, and as to correction of any records that suggest he is disqualified by Defendants." (Amended Verified Complaint, ¶ 46, Pg. 9, Doc. 8, PageID#51). Plaintiff's Fifth Amendment claim is obviously a claim of procedural due process, not of substantive due process, so Defendants' claim that Plaintiff seeks relief under a "generalized notion of **substantive** due process" simply is not true. Since the Second Amendment addresses a substantive right, and the Fifth Amendment addresses procedural rights, the claims are not duplicative as Defendants claim.

As shown by Defendants' own citation, *Graham v. Connor* addresses substantive due process, not procedural due process. 490 U.S. 386, 395 (1989). In fact, *every* case Defendants cite in their motion to dismiss Plaintiff's Procedural Due Process claim fails to engage in any analysis of Procedural Due Process. In *United States v. Carey*, the Sixth Circuit addresses the fact that a convicted felon does not have a "substantive due process" right to possess or carry a firearm. 602 F.3d 738, 740-41 (6th Cir. 2010) (abrogated by *Bruen*, 597 U.S.). *Carey* briefly discusses procedural due process, but this is in regard to a motion for expungement and has nothing to do with the NICS system, which is the center of Plaintiff's claim. *Carey*, 602 F.3d, at 741.

Defendants' citation to *United States v. Portillo-Munoz* is equally baseless, as the discussion of incorporation plainly demonstrates that court is addressing Substantive Due Process, not procedural due process. 643 F.3d, 437, 442, n. 4 (5th Cir. 2011) (abrogated by *Bruen*, 597 U.S.). *Portillo-Munoz*, like *Carey*, further at no point addresses due process concerns regarding failure to provide grounds for denial of firearms.

Defendants' citation to *United States v. Sitladeen* is further baseless, and borders on frivolous. 64 F.4th 978, 988 (8th Cir. 2023). The entire analysis of the Fifth Amendment claim in *Sitladeen* is an analysis of whether the federal ban on illegal immigrants possessing firearms violates the Fifth Amendment's guarantee of equal protection, which is not at issue in this current case. *Id*. And again, at no point is the NICS system even mentioned in *Sitladeen.* These cases are entirely inapposite.

Nor does *Pena v. Lindley* offer any grounds for dismissal. 898 F.3d 969, 986 (9th Cir. 2018) (abrogated by *Bruen*, 597 U.S.). Beyond an acknowledgement of the Incorporation Doctrine, *Pena* does not even mention due process. *Id*., at 975, n. 5. At no point in the decision is the Fifth Amendment even mentioned. *Id*. And at no point is even a substantive due process claim levied, let alone a procedural one. *Id*.

If Plaintiff was asserting a Substantive Due Process violation, Defendants would be correct. But Plaintiff is asserting a Procedural Due Process claim.

Plaintiff, on January 26, 2024, attempted to purchase a firearm, but was denied due to a background check via the National Instant Criminal Background Check System ("NICS"). (*Id.,* ¶¶ 24-26, Pg. 6, PageID#48). Plaintiff still wishes to purchase a firearm, but is being prevented from doing so due to the NICS denial. (*Id.,* ¶ 7, Pg. 6, PageID#48). Plaintiff issued a Request for or Challenge the Reason(s) for Firearm Related Denial on January 31, 2024, and the Attorney General, on February 1, 2024, responded, indicating "the FBI's Criminal Justice Information Services Division does not provide the reason(s) for delays'denials or process challenges regarding permits issued by state or local agencies that use the ... (NICS) for firearm related purposes." (*Id.,* ¶¶ 28-29, Pg. 6, PageID#48). On June 6, 2024, Plaintiff once again attempted to seek a clarification or correction of the Department of Justice's records, once again providing the NICS Transaction

11

Number.  (*Id.*, ¶ 31, Pg. 7, PageID#49).  The DOJ responded that they purged the record of Plaintiff's denial.  (*Id.*, ¶¶ 32-33, Pg. 7, PageID#49).  Plaintiff still seeks to own a firearm as he is legally eligible to do so, but cannot as a consequence of this denial and fear of prosecution.  (*Id.*, ¶¶ 34-37, Pg. 7-8, PageID#49-50).  This violated Plaintiff of "the right to be heard in a timely manner and in a timely fashion, as to both the proceedings at issue to the extent that the West Virginia proceedings act as a disqualifier, and as to correction of any records that suggest he is disqualified by Defendants."  (*Id.*, ¶ 46, Pg. 9, Doc. 8, PageID#51).

The Due Process Clause of the Fifth Amendment applies to administrative matters and other instances of government action. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the procedural element of that clause, a party must be afforded adequate notice and a fair opportunity to be heard before being deprived of its property, in this case Mr. Mach's right to possess a firearm. *Arch of Ky., Inc. v. Dir., Off. of Workers' Comp. Programs*, 556 F.3d 472, 478 (6th Cir. 2009). That isn't to say that West Virginia's code is inadequate for mere probable cause, heard *ex parte*, for an evaluation.  But it is to say that if such proceedings result in permanent and lifetime disqualification from ever owning a firearm, the Fifth Amendment is violated without fulsome proceedings (which West Virginia provides for formal commitment proceedings, but was not afforded to Mr. Mach here).

Defendants' motion cites to no law entitling them to 12(b)(6) relief as applied to Plaintiff's Fifth Amendment procedural due process claim, so their motion to dismiss should be denied.

4. **Plaintiff has stated a claim under the Privacy Act**

Defendants allege that the NICS system is entirely exempt from the Privacy Act, citing to *Richardson v. FBI*, 124 F. Supp. 2d 429, 431 (W.D. La. 2000).  *Richardson* is a case concerning a NICS denial related to a Plaintiff's prior conviction for armed robbery, invoking 18 U.S.C. §

12

922(g)(1). *Richardson*, 124 F. Supp., at 430. Defendants and the *Richardson* Court specifically cites to 5 U.S.C. § 552a(j)(2) and 28 C.F.R. § 16.96(p)(1) to justify this assertion. While this may justify exempting NICS from the Privacy Act as applied to the storage of felony convictions, the law does not justify exempting NICS from the Privacy Act as applied to the storage of erroneous civil mental health records.

First, 5 U.S.C. § 552a(j)(2) permits an agency head to exempt, through the promulgation of rules, from the Privacy Act systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of:

> (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;
>
> (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or
>
> (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."

5 U.S.C. § 552a(j)(2). All three of the categories of information the Department of Justice may exempt from the Privacy Act pertain to *criminal* records.

13

The Department of Justice sought to exempt certain records in 28 C.F.R. § 16.96(p)(1). But it cannot do so, at least not consistent with the statute, for mental health records (as opposed to criminal offenders, criminal investigations, or enforcement of criminal laws). Put simply: 5 U.S.C. § 552a(j)(2) is a limitation on the ability of exempt that cannot extend to Mr. Mach's mental health records.

It is not permissible to promulgate a regulation that exceeds the statutory authority to exempt. *Heckler v. Campbell*, 461 U.S. 458, 466 (1983); *Herr v. United States Forest Serv.*, 803 F.3d 809 (6th Cir. 2015) ("parties may always assail a regulation as exceeding the agency's statutory authority").

Here, however, Plaintiff does not claim to file suit for erroneous criminal records, but rather erroneous civil mental health records, which fall outside the statutory authorization to grant exemptions to the Privacy Act. Due to the nature of the information being civil mental health matters, and not criminal records, the Privacy Act is not exempted in this suit or any other 18 U.S.C. § 922(g)(4) suit under the plain text of the statute and regulation. The motion to dismiss should be denied.

### IV.    CONCLUSION

Defendants' motion to dismiss misapplies the law, misconstrues the complaint, misconstrues Plaintiff's records, and therefore should be denied.

Respectfully submitted,

/s/ Christopher Wiest  
Christopher Wiest (KBA 90725)  
Theodore J. Roberts (KBA 100610)  
Chris Wiest, Attorney at Law, PLLC  
50 E. Rivercenter Blvd, Ste. 1280  
Covington, KY 41011  
(513) 257-1895  
(859) 495-0803 (fax)

                        chris@cwiestlaw.com
                        *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I certify that I have served a copy of the foregoing upon all Counsel of record, this 14 day of November, 2024.

                        /s/ Christopher Wiest (KBA 90725)
                        Christopher Wiest (KBA 90725)